# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

DEVAN HOWARD *et al.*,

    Defendants.

Case No.: SACR 16-00029(C)-CJC

**ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY**

## I. INTRODUCTION

Defendants Keith Marvel Walton, Robert Wesley Johnson, Justin Marques Henning, Jameson LaForest, Jeremy Tillett, and Evan Kwan Scott are charged with one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count One), eight counts of interference with commerce by robbery in

-1-

violation of 18 U.S.C. § 1951(a) (Counts Two, Four, Six, Eight, Nine, Eleven, Thirteen, Fourteen), and five counts of discharging or brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Three, Five, Seven, Ten, and Twelve) arising out of a series of "smash-and-grab" style robberies of jewelry stores in the Central District of California. (*See generally* Dkt. 537 [Third Superseding Indictment, hereinafter "TSI"].) Before the Court is Defendant Johnson's motion to exclude the expert testimony of Special Agent ("SA") Kevin M. Boles, the government's cell phone expert, based upon his use of historical cell site data as evidence regarding the general geographical location of Defendants at particular points in time. (Dkt. 502 [Motion, hereinafter "Mot."].) Alternatively, Johnson requests a *Daubert* hearing to evaluate the reliability of SA Boles' testimony.[1] (*Id.*) For the following reasons, the motion is DENIED.

## II. LEGAL STANDARD

"Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (internal citation omitted); *see also Cree v. Flores*, 157 F.3d 762, 773 (9th Cir. 1998) (noting that expert testimony is "not subject to the strictures of Federal Rules of Evidence 602 and 803"). Faced with a proffer of expert scientific testimony, a district court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In other words, all admitted expert testimony must be

---

[1] Defendant LaForest's request to join Johnson's motion is GRANTED. (Dkt. 505.)

"both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, No. 14-16321, 2017 WL 2381122, at *3 (9th Cir. June 2, 2017). For an expert to be qualified to render opinions, the opinions must also be within his or her "area of expertise." *White v. Ford Motor Co.*, 312 F.3d 998, 1008–09 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003).

**III. DISCUSSION**

As an initial matter, Johnson does not dispute SA Boles' qualifications or the relevance of his testimony. (*See generally* Mot.) Nor could he. As this Court has previously found, SA Boles' curriculum vitae indicates that he is well qualified to testify as an expert in the field of historical cell site analysis. *United States v. Elima*, No. SACR 16-00037-CJC, 2016 WL 3546584, at *3 (C.D. Cal. June 22, 2016). SA Boles is a member of the FBI's Cellular Analysis Survey Team ("CAST"), which was "formed . . . specifically for the purpose of analyzing call records." *U.S. v. Rosario*, No. 09-CR-415-2 (VEC), 2014 WL 6076364, at *2 (S.D.N.Y. Nov. 14, 2014). Since 2009, SA Boles has been the Task Force Coordinator for the Inland Regional Apprehension Team, which provides call detail record analysis and geographic mapping for cell towers to assist local law enforcement. (Dkt. 502-2.) He has also received specialized professional training and instruction, including in "Basic Cellular Analysis and Geo Survey," "Advanced Cellular Analysis," and "Cellular Analysis Survey Team Certification Training." (*Id.*)

SA Boles' testimony is also clearly relevant. His testimony is expected to place Defendants and the cooperating witnesses in the general area where and when the various robberies in this case took place. (Dkt. 528 [Opposition, hereinafter "Opp."] at 3, 5.) According to the government, SA Boles is expected to utilize cell phone records revealing which cell tower and antenna a cellphone utilized at a given moment to map the cell tower and sector that was used at a specific time. (*Id.* at 3.) "A cell phone will seek

the tower with the strongest, cleanest signal as the one to use," which "generally comes from the tower that is closest to the phone or the tower with the best line of sight." (*Id.*) Thus, SA Boles' forthcoming report is expected to "offer probative evidence connecting various conspirators [in this case] to certain robberies, including by corroborating statements of cooperating witnesses." (*Id.* at 3–4.) Such evidence would clearly assist the jury in determining important issues at trial, including the credibility of the cooperating witnesses' statements and the general whereabouts of Defendants during the robberies.

Instead, Johnson challenges the reliability of SA Boles' testimony. He argues that the use of historical cell site data is "an exceedingly crude and unreliable methodology to identify the geographical location of a cell phone user" because conclusions obtained through this methodology "can be skewed and distorted by a multitude of factors apart from the distance between a cell phone and a given cell tower off of which it pings." (Mot. at 4.)

A Court *may* use the following factors to determine whether the methods and principles employed by an expert are reliable: (1) whether the method "can be (and has been) tested;" (2) whether the method "has been subjected to peer review and publication;" (3) the method's "known or potential rate of error;" (4) whether there are "standards controlling the technique's operation;" and (5) whether the method has "general acceptance" within the "relevant scientific community." *Daubert*, 509 U.S. at 592–94; *accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999).

Johnson contends that the practice of using historical cell site data has not been the subject of scientific study and is not in use outside the realm of law enforcement. (Mot. at 4.) In support, he attaches the declaration of Dr. Manfred Schenk, a Navigation and Telecommunications Scientist who avers that historical cell site data is "not scientifically

reliable" because use of a single cell tower to determine a user's location is not a scientific procedure. (*See* Dkt. 502-5 ¶ 9; *see also* Dkt. 558 [Reply"] at 2.) Dr. Schenk believes that the ability of a cell phone handset to "ping" off a cell tower depends on twenty-four variables. (*Id.* ¶ 7(B).) Johnson argues that Dr. Schenk is the "only real scientist to weigh in on the key issues presented by this Motion." (Reply at 3.)

However, "the test of reliability is flexible," and *Daubert*'s list of factors to consider, such as whether the method can or has been tested or is subject to peer review, "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141; *see also id.* at 150 ("[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue."). The reliability requirement is ultimately aimed at excluding "junk science," *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011), not expert opinions that fall within "the range where experts might reasonably differ, and where the jury must decide among the conflicting views of different experts, even though the evidence is 'shaky,'" *Kumho Tire*, 526 U.S. at 153. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," not exclusion. *Daubert*, 509 U.S. at 596.

Dr. Schenk's critiques do not warrant exclusion of SA Boles' testimony. "[T]he mere existence of factors affecting cell signal strength that the expert may not have taken into account goes to the weight of the expert's testimony and is properly the subject of cross-examination, but does not render the fundamental methodology of cell site analysis unreliable." *United States v. Jones*, 918 F. Supp. 2d 1, 5 (D.D.C. 2013); *see, e.g.*, *Jimenez v. Walker*, No. 08-5489-YGR, 2012 WL 4051124, at *18 (N.D. Cal. Sept. 13, 2012) ("[T]here were permissible inferences that the jury could draw from this evidence

as to where the cellphones were located when the calls were made."). Cell site data analysis is a widely used and respected methodology that has overwhelmingly been found admissible by federal courts. *Jones*, 918 F. Supp. 2d at 5; *see also United States v. Schaffer*, 439 F. App'x 344, 347 (5th Cir. 2011) (historical cell cite analysis is "neither untested nor unestablished"); *United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 56–57 (D.D.C. 2013) (citing *Jones* to support the reliability of cell site analysis in determining general location); *United States v. Davis*, No. 11-60285-CR, 2013 WL 2156659, at *4 (S.D. Fla. May 17, 2013) (noting the regular and reliable use of cell site analysis); *United States v. Carpenter*, No. 12-20218, 2013 WL 6385838, at *6 (E.D. Mich. Dec. 6, 2013) (holding cell site analysis is a reliable method to determine that Defendants' cell phones were in geographic areas consistent with the location of the crimes); *United States v. Reynolds*, No. 12-20843, 2013 WL 2480684, at *5 (E.D. Mich. June 10, 2013) (concluding cell site analysis may reliably determine general location); *United States v. Rosario*, No. 09-CR-415-2 VEC, 2014 WL 6076364, at *3 (S.D.N.Y. Nov. 14, 2014) (variances in cell phone technology and connection to cellular towers may affect persuasiveness of testimony but do not render the methodology of cell site analysis inadmissible or unreliable as a whole); *United States v. Eady*, No. 12-CR-415(DCN), 2013 WL 4680527, at *3-4 (D.S.C. Aug. 30, 2013) (comparing the cell site methodology used to that in *Jones* and *Machado* and affirming reliability); *United States v. Allums*, No. 08-CR-30(TS), 2009 WL 806748, at *2 (D. Utah Mar. 24, 2009) (holding legitimate questions as to accuracy of cell site analysis may be presented through cross-examination, and do not render the methodology itself unreliable). Furthermore, the method has been tested by some experts in the field. *See, e.g.*, *Schaffer*, 439 F. App'x at 347; *United States v. Benford*, No. 2:09 CR 86, 2010 WL 2346305, at *3 (N.D. Ind. June 8, 2010).

Johnson's motion relies heavily on the fact that cell site data cannot determine the *exact* location of a cell phone user. (*See* Mot. at 4–5 (citing *United States v. Davis*, 785

F.3d 498, 515 (11th Cir. 2015) and *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 609 (5th Cir. 2013)).) However, that does not mean that such evidence is "crude and unreliable." (*Id.*) Historical cell site data "can show with sufficient reliability that a phone was in a *general area*, especially in a well-populated one. It shows the cell sites with which the person's cell phone connected, and the science is well understood." *United States v. Hill*, 818 F.3d 289, 298 (7th Cir. 2016) (emphasis added). Johnson argues that the government will use historical cell site data to place defendants at specific locations and times, pointing to a variety of specific allegations regarding time and place in the TSI. (Reply at 4.) However, the fact that the government has alleged that Defendants were at particular places at particular times does not mean that SA Boles will purport to pinpoint their exact locations. SA Boles is expected testify that the historical cell site data in this case will prove that Defendants and the cooperating witnesses were in a general geographic area. This type of testimony is "widely accepted in both federal and state courts across the country," *Jones*, 918 F. Supp. 2d at 7 (collecting cases), and will *assist* the jury in making any appropriate, reasonable inferences as to whether Defendants were in fact at the scenes of the various crimes.

Johnson also provides excerpts from the affidavit of Drug Enforcement Administration SA Kelly Chang, whom he contends is a "peer" of SA Boles, in support of his motion. (Dkts. 502-3, 502-4.) In the context of discussing the necessity for using wiretapping in a different case, SA Chang explained that "cell-site data can place a user as far as 4,999 meters [several miles] from a cell tower, which is too large a radius to help agents determine a user's actual location." (Dkt. 502-4.) As an initial matter, it is not clear that SA Chang is SA Boles' "peer," since she does not appear to have any specialized knowledge, training, or experience in cell site analysis. (*See* Dkts. 502-3, 502-4.) In any event, SA Chang's statements are consistent with the finding that historical cell site data places a cell phone in a general geographic location, not a specific pinpoint location, and she agrees that cell site data is still *useful* in identifying a

defendant's location. (Dkt. 502-4 ("[With] a wiretap, such location data would be valuable in the investigation. For example, if agents intercept communications indicating that [the defendant] is traveling to or at the PCP lab, then the location data, in conjunction with the wiretap, can help identify the exact location of the PCP lab.").) Furthermore, as the government points out, SA Chang's statements about the margin for error in the use of historical cell site data "is likely referring to a transmittal range with no or very limited interference, which one may find in a rural or undeveloped area." (Opp. at 9.) The method is more accurate in dense city areas, like those where the robberies in this case took place, where there are many more cell towers. (*Id.*) Johnson disputes this, arguing that in the case SA Chang worked on the investigation focused on the city of Compton, California. (Reply at 6.) Nevertheless, SA Chang did not limit her comments regarding the margin of error to cities like Compton, nor does she appear qualified to opine as such. (*See* Dkt. 502-4.) She merely noted that cell site data *can* have a margin of error that large. Simply put, Johnson's critiques of historical cell site analysis may be fertile ground for cross-examination, but do not warrant the exclusion of SA Boles' testimony.[2]

In the alternative, Johnson requests that the Court schedule a *Daubert* hearing. (Mot. at 2.) "In light of the Supreme Court's emphasis on the broad discretion granted to trial courts in assessing the relevance and reliability of expert testimony, and in the absence of any authority mandating such a hearing . . . trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function" in addressing the admissibility of expert testimony. *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000). The Court concludes that a *Daubert* hearing would not be helpful here

---

[2] In his Reply, Johnson belatedly asks the Court to take judicial notice of the sworn statements of Dr. Schenk and SA Chang. (Reply at 4.) This request is improper, since judicial notice is intended for documents "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201. However, the Court has considered such evidence to the extent it purports to support Johnson's motion.

due to the wide consensus in the judicial community that historical cell site data is a reliable methodology.

**IV. CONCLUSION**

For the foregoing reasons, Defendant Johnson's motion to exclude expert testimony or for a *Daubert* hearing is DENIED.

DATED: June 19, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE